Peaksox, C, J.
The Court has had great difficulty on the question of jurisdiction. 1 In this State the Court's of Law and and the Courts of Equity are held by the sam^ persons, and there is a strong tendency to disregard the distinction between questions of Law and of Equity, and to n.llow.the jurisdiction of the Courts to run into eaob other and become confounded ; that is especially so when, as *72 in this case, both parties wish to get a speedy adjudication, and the defendants waive all objections, so as to put on the Court the duty of raising the question as to jurisdiction and the burthen of deciding it, without the,aid of an argument on both sides. Manly vs. City of Raleigh, 4 Jones’ Eq., 370, was. a case like this : both parties wished a.speedy adjudication-; the question was not raised, and passed sub silentio ; but that case is now relied on to sustain the jurisdiction of a Court of Equity to determine on an injunction bill “a dry question of law.” It is admitted 1 he,question could be presented in. a Court of Law by paying the ta:c under protest aud bringing an action for money had and received ; but it is said, according to the mode of proceeding at law, oven, tan 'payor must bring a separate action, aud it is nocesjary that jurisdiction should bo/assumed in equity to pi (went ihe “ multiplicity of suits'.” That is a head o-' Equily jurisdiction, under which the Court 1ms in some special in-'.lances interfered by injunction, and as Manly vs. City of Raleigh was a bill against a municipal Corporation, sad'not against its tax col Junior, and is á precedent directly applicable’ to the present bill, we have concluded .to act upon it, aud take the jurisdiction. No injury can result., for if the operations of a Corporation are likely to be seriously impeded by having its sources of revenue slopped, it may insist on 'an injunction bond being tiled, and it will become the duty of the Court to require a bond large enough, for full indemnity, and it is apprehended that the few who file bills for themselves aud “ on behalf of all others in like con-, dition/' will.net be willing to bind themselves to answer the whole default’for the sake of raising an" equity on the ground of avoiding “ the multiplicity of suits.”• Wo take occasion to say, in order to “ exclude a conclusion,” *73 that this decision is confined to bills against Municipal Corporations, and will not be considered an authority to sustain an injunction bill against tax collectors of the Confederate States, or of the. State or a County. That subject involves other and fa? graver considerations,- which are left open, and in respect to which we do not.wish to be at all committed. I will suggest one or two.
1. An injunction against tax collectors, the effect of which' is to stop all •collections, might- seriously obstruct the operations of the government; a consequence in comparison with which the notion of preventing a multiplicity of suits sinks into insignificance and which consequence is avoided when the taxes are paid to the collectors under protest, and he pays them over to the government, taking its indemnity in respect to such actions as may he brought against him.
‘2. iiquity acts in personam, and enforces its orders and decrees by process'of contempt. When one having judgment at law is about to use it against conscience, a bill is not «ínterfcained against the Hours of Lav/ or the Sheriff, hut against the party to the action; an injunction goes against him and he is put in contempt for disobeying it. A bill cannot be entertained against the government, and it would seem it ought not to bo entertained against the officer of the government; for should*-ho he enjoined, he cannot he put in contempt, for ho «annot obey the order of the Court unless be violates his sworn duty, and is guilty of direct disobedience to the orders of the government of which ho is an officer.
3. A Court of Equity has no machinery and no officers by which it can enforce its orders against an officer of the government. Eor illustration ; Suppose a hill to bo entertained against a Sheriff and he is enjoined from the *74 collection of taxes, the copy, subpoena áncí fiat are banded' to him, (say by the Clerk) ; he disobeys the order. What officer has the Court by \vhom the Sheriff can be taken into custody and brought before it for the alleged contempt/ Who is to call out thoysosse comitatus ? I will pursue the subject no further.
On the question presented by the bill, we have had but little difficulty. By the proper construction of the 4th section of the act of May, 1864, the. taxes which may be imposed upon all persons whose ordinary avocations are pursued within the corporate limits of the town, although resident beyond* the corporate limits, are restricted to property owned by thcm.in the town, and’to their persons,. and subjects incident to their persons. The only question •made is in regard to the latter, when one has a business residence in town ; which is the meaning- of the description ;c persons whose ordinary avocations are pursued within the corporate limits.” The money he has on hand, the salary which lie earns there, the income which he receives there, whether it be interest on bonds, tbe debtors' residing elsewhere, or, dividends on stock in.a factory situate out of town, or in a steamboat company, are subjects incident to his person ; and in respect to the particulars enumerated by the three gentlemen' who filed this bill, we do not see that#the Commissioners have exceeded the power given them h^ the act. We understand the u riding vehicle ” to mean the buggy used to come into town every morning and go out every night, and consider it adjunct to their town residence, and incident to its enjoyment. In respect to the other gentlemen, in behalf of whom the hill is filed, the allegations are not sufficiently ■distinct to enable us to express an opinion.
*75 Tlicquestion, then, is narrowed to this : Had the Legislature power to authorize the Mayor and Commissioner» to impose such a tax on persons who transact, their business and live in town during the day, and live in the country during the night? . '
■ It was earnestly contended'by Mr. Moore, that the Legislature has no power to authorize the imposition of such a tax upon strangers who may occasionally visit the town. That question is not presented by the c.i o; for although the act refers to tdujse gentlemen as persons resident beyond tiro, corporate limits, in contradistinction to persons resident within the corporate limits, it also refers'to them as persons whose ordinary avocations are pursued within the corporate limits, and the facts being stated at large, the question of residence is left open tó be governed by the application of principles, of law whereby these gentlemen are put on very different footing from mere strangers. They have two r’csidericoo, a business residence in town and a domestic residence in its vicinity, ui>d may be called amphibious citizens, who enjoy the conveniences and comforts of their double residence. They hove the benefit of a town residence for the transaction of business, the advantages-of town society for themselves and families, of attending church, sending their children to school, &c.s and the benefit of a country residence for cheapness-, healthfulness, and the pleasure of country life. They live in town nearly if not quite half of the twenty-four hours of every day in the year, and must be considered in-part, residents of the town. Taking that to be so, there can be no reason on general principles; why they should not contribute to thp expenses of the town, excluding their country residence and property out of town, (which pay no <town tax) on the- same ground, that every man *76 contributes to the expenses of the community in which he-lives. The provision which confers on these amphibious citizens the right to vote at municipal elections, meets the objection which might otherwise have been made on the footing of the time-honored maxim, “representation and taxation should go together.”
The case of Manly vs. City of Raleigh, .cited on the question of jurisdiction, is an authority in support.of the0 power of the Legislature, It is there held that the Legislature has power" to extend the limits of an incorporated town, without the consent of the persons included by the extension. In a general view the act under consideration does in effect the same thing. These gentlemen and their country residences might have been included by extending the limits of the town, whereby all would have become liable to a town tax. The'grcater includes the loss'. Perhaps the object has been answered by making them to some purposes citizens of the town, without the inconvenience of extending its territorial limits. Tbxt, however, is not a question of power, hut of .expediency, with which as a Court we have no concern.
The bill is dismissed.